In re Account of the Executor of James Jamison, deceased.    Appeal of N. M. Marker & Son.

*Husband and wife—Loan by wife to husband—Evidence.*

Where the orphans' court, sustaining the report of an auditor, awards a share of a decedent's estate to the wife of a son of the decedent, as against creditors of the son, the Supreme Court will not reverse the decree where there is evidence sufficient to show that the wife had a separate estate of her own; that she had loaned a sum of money to her husband which, with interest, amounted to the sum awarded to her, and that on the day after the decedent's death the husband, in good faith, assigned to his wife his share of his father's estate.

Argued Oct. 27, 1897.    Appeal, No. 167, Oct. T., 1897, by N. M. Marker & Son, from decree of O. C. Westmoreland Co., Feb. T., 1896, No. 43, overruling exceptions to auditor's report. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.    Affirmed.

Exceptions to auditor's report, distributing $9,438.47 in the hands of Armstrong Jamison, executor of the estate of James Jamison, deceased, realized from real and personal property.

It appeared that Samuel H. Jamison, a son of the decedent, had confessed judgment in favor of Lizzie Jamison, his wife, in the amount of $2,159.58; also that he had assigned his interest in his father's estate, in good faith, to his wife. The auditor distributed to Samuel, $1,752.83, of which he applied, by virtue of assignment, $1,700.23 to the judgment of Lizzie Jamison.

The report of the auditor, J. V. Wood, Esq., was in part as follows:

In the distribution there are but two serious questions to be considered:

1. The distribution of the share of Samuel Jamison, and in consideration of the matter, a large amount of testimony has been taken and many authorities have been cited and examined.

Previous to the act of 1848 there could have arisen no question as to whether Lizzie Jamison, the wife of Samuel H. Jamison, had any standing whatever in pressing her claim to participate in the share of her husband in his father's estate.    The act of

1848 with the long line of decisions under it, together with the acts of 1851 and 1887, have placed the rights of married women in Pennsylvania in a very different legal position than they enjoyed previous to their passage. Before the act of 1887 the intervention of a third party as trustee for the feme covert was requisite to secure her separate estate when she desired to make investments other than in real estate. Since that act a married woman may enjoy her own estate as she may see proper. She may invest it so as to secure its increase or loss; she may do anything with it that her husband may do with his own estate; in other words, her property is absolutely her own while living, and may be devised as she thinks proper after her death, subject to the laws relating to decedents' estates. The feme covert may loan to any person her money, her husband not even excepted, and it surely is not presuming too much to say that the wife will more quickly loan her property to her husband than to any other person. The following quotation is from Endlich & Richards on Rights of Married Women, p. 256, sec. 212:

"Nothing can be more natural than that she will lend her money to her husband, and that he will give her a security for it whenever he sees financial embarrassment approaching. Such loans and securities are sanctioned by numerous decisions. She has the same right to loan to him as to a stranger; it is as lawful for him to secure that loan as any other." See also Lahr's App., 90 Pa. 507.

It is further held that where the feme covert has given as a gift or present her personal property to her husband, the burden of proof must be upon him to show that it was a gift. In this case upon the claimants who claim adversely to her interest, the following quotation in support of this proposition is from Endlich & Richards on Rights of Married Women, p. 257, sec. 313: "At common law, while a wife may, if she choose, in the absence of restraining provisions in the deed under which she holds personal property to her sole and separate use, give the property to her husband, yet there is no presumption where he has received it that she has done so. The burden of proof is upon him, and, failing to establish the fact of a gift, he is held accountable as a trustee for her in respect of the property thus received by him. Since the act of 1848 this doctrine applies to the corpus of all the wife's separate personal property. He is,

therefore, in every such case, bound by legal implication and without any special promise to that effect, to return the money to her, even though he received it with her assent. Whilst, therefore, with reference to property of the wife received by the husband with her consent, he is presumed to be her debtor to the amount thereof, without any promise to repay. In order to charge him with interest thereon . . . . it requires an explicit undertaking on his part to that effect. . . . Of course, where the husband agrees to pay interest, or the circumstances proved show an intention to create the ordinary relation of debtor and creditor, he is liable for interest." There, therefore, can be no question as to this branch of the case. If Lizzie Jamison loaned or even gave money to her husband, she is entitled to recover; and the evidence shows no gift or present of it to him such as will prevent a recovery.

A second phase is now reached. What right had her husband to make a preferred creditor of his wife? From the decisions and the authorities above cited we see that a married woman has a clear right to do with her own as she pleases. If she were deprived of the legal right to become in necessity a preferred creditor, the whole legal fabric as to her rights to loan her money to her husband would be defeated. But even here we have the authority of Endlich & Richards on Rights of Married Women, p. 246, sec. 207, and Wilson v. Silkman, 97 Pa. 509: "That where the husband is indebted to his wife and to others, he may by confessing judgment to her prefer her to his other creditors, the same as he might prefer one of the latter to the rest of them, and the mere fact that the judgment confessed includes interest on the loan, when, in fact, no agreement that the sum loaned should bear interest, does not make it fraudulent as against other creditors. But, as between the wife and other creditors at the time of the confessing of such judgment the burden of proving a good consideration for it rests with her."

In the light of the above authorities the question now is: Did Lizzie Jamison have estate of her own, and if so, how much of the same did she loan to her husband, Samuel Jamison? The account of David Myers, guardian of Lizzie Jamison, formerly Lizzie Sheffler, shows that, previous to her marriage, he gave to her at one time $90.00, and that afterwards and before her marriage, by an order of the orphans' court, he gave to her the

sum of $200 to procure for her a wedding outfit. Some testimony was taken as to what became of this money, but the $90.00 that was given to her and the $200 for the outfit certainly could not have been given or loaned to Samuel Jamison. It is to be taken for granted that the money so given her was used in compliance with the court's order—i. e., to procure a wedding outfit, and more especially so, as her guardian testified that after giving her the money he saw in her possession clothing for the wedding. Now rejecting all claim to any of the money paid to Lizzie Jamison by her guardian previous to her marriage, it appears by the settlement he made with her (in which her husband joined), on April 21, 1887, that he on February 16, 1885, gave to her $200, on July 1, 1885, $25.00, on October 27, 1885, $20.00, on January 23, 1886, $25.00 and on February 18, 1887, $225.77. Out of the first money so received the testimony shows that she purchased furniture to the amount of $50.00, and that the rest of this, as well the subsequent moneys received, she gave to her husband. That out of this money a horse was purchased for her and by her direction, which horse was afterwards traded for another horse and $60.00 with some one in Donegal. The boot money, $60.00, was then given to her husband. This horse was afterwards traded with David Myers, her former guardian, and $140 to boot, which sum was given to her husband, and this horse was afterwards sold for $200, and this money too was given or loaned to her husband. The testimony of Lizzie Jamison shows that James Jamison, the father of Samuel Jamison, gave her the sum of $400, while living on his farm, and an inspection of the executor's account shows that he has taken credit for $400 on a note given by her husband and herself to James Jamison, the decedent. It makes no difference how she received the money loaned her husband, so long as it was her own money; if she then loaned it to her husband she is entitled to repayment. Now taking all these sums and calculating the interest thereon at six per cent direct, the sum of $1,700.23 is found to be the amount now due to Lizzie Jamison by her husband. It has been contended before the auditor that these various sums received by her went toward keeping herself and family. James Jamison was a man of means, and an inspection of the account filed by his executor shows that he in his lifetime gave to his children various sums,

and among them to Samuel at one time $100 and at another $647.75, for which he took his notes; while no evidence whatever has been offered as to the time this money was given by him it certainly is a fair inference that he did not give it to him while his son was a member of his own household, and more likely that it was given after Samuel was married, and if such is correct, then it would be used to support his family. There is, however, no evidence that Mrs. Jamison used her money in keeping the family, excepting the purchase of furniture which is not included in the amount allowed to her.

Further, Samuel Jamison confessed judgment to his wife for $2,159.58, at No. 787, August term, 1893. This judgment was entered on July 19, 1893, the same day that the assignment of his interest in his father's estate to his wife was made and recorded. The note, it was testified, was made up by several other notes and interest computed and then included in the new note until the amount of the last note was reached, which was then entered. It does not seem right that in this way compound interest should be computed between a husband and wife for a long series of years to the detriment of other creditors. If so, then, in a series of years, every month a little more money might be advanced, a new calculation made and the interest thereon so computed would not be just. If this were true, then the law of married women and the decisions of our courts could be used to promote the greatest kind of frauds. The position has been taken that whatever moneys Lizzie Jamison has loaned or given her husband, and the gains by the sale and trade of her horse, should be returned to her with interest thereon from the date of each transaction as near as can be ascertained. The assignment was to secure her rights, and if Samuel Jamison made error and confessed judgment for what might not be fairly due to his wife, yet what is due to her must not be taken from her by act.

Exceptions to the auditor's report were dismissed by court.

*Error assigned* was decree of the court.

*S. A. Kline*, with him *George S. Rumbaugh* and *H. E. Marker*, for appellants.—Fraud may be inferred without direct proof from the attendant circumstances: Kaine v. Weigley, 22 Pa.

179; Kinzer v. Mitchell, 8 Pa. 80; Glessner v. Patterson, 164 Pa. 224.

Where a husband confesses judgment to the wife she must prove it to be honest: Winter v. Walter, 37 Pa. 155; Aurand v. Schaffer, 43 Pa. 363; Bucher v. Ream, 68 Pa. 421; Topley v. Topley, 31 Pa. 328; Walker v. Reamy, 36 Pa. 410; Grabill v. Moyer, 45 Pa. 530; Keeney v. Good, 21 Pa. 349; Black v. Nease, 37 Pa. 440; Baringer v. Stiver, 49 Pa. 307; Campe v. Horne, 158 Pa. 508; Shober v. Harrison Bros. & Co., 3 Pa. Superior Ct. 188; Endlich & Richards on Rights of Married Women, 28; Hirsh v. Wenger, 182 Pa. 246.

*John B. Steel*, for appellee.—Where a married women is possessed of a separate estate, so that her husband has no right to her money or the rents and profits of her real estate, she may loan them to him, as well as to a stranger: Towers v. Hagner, 3 Wh. 48; Hinney v. Phillips, 50 Pa. 382; Endlich & Richards on Rights and Liabilities of Married Women, page 256, sec. 212; Lahr's App., 90 Pa. 507; Wormley's Est., 137 Pa. 101; Grabill v. Moyer, 45 Pa. 530.

A judgment honestly confessed by an insolvent husband in favor of his wife for money loaned him by her is not fraudulent as to creditors because it includes interest, although there is no agreement that it should bear interest: Meckley's App., 102 Pa. 536; Watch Co. v. Bedillion, 131 Pa. 385; Wingerd v. Fallon, 95 Pa. 184; Werner v. Zierfuss, 162 Pa. 360; Baird v. Ford, 152 Pa. 644.

PER CURIAM, November 8, 1897:

We find nothing in the record to justify either a reversal or modification of the decree. Nor do we think there is anything in either of the specifications of error that requires discussion.

On the facts found by the learned auditor and approved by the court, the decree is affirmed and appeal dismissed at appellants' costs.